**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Lee Tennyson, | No. CV-23-00724-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff David Lee Tennyson seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied him supplemental security income ("SSI") benefits under section 1611 of the Social Security Act from April 2017 to August 2020. Because the decision of the Administrative Law Judge ("ALJ") is erroneous, the Commissioner's decision is reversed and the matter is remanded for a calculation of benefits.

## BACKGROUND

Plaintiff was born in June 1960. (Doc. 11-1 at 46.) On April 20, 2017, Plaintiff applied for supplemental security income disability benefits. (*Id.* at 73.) On September 23, 2019, the agency determined Plaintiff met the medical requirements to receive SSI. But, on October 8, 2019, the Social Security Administration issued a notice stating that the claimant was ineligible for SSI benefits due to unearned income. (*Id.* at 73–86.) On October 30, 2019, Plaintiff filed a request for reconsideration, disputing the determination

1  of ineligibility of benefits. (*Id.* at 87–89.) Upon reconsideration dated February 19, 2020, the decision was affirmed. (*Id.* at 90–91.) Plaintiff filed a request for hearing on April 2, 2020. (*Id.* at 94.) On May 19, 2021, he appeared with his attorney and testified during a telephonic hearing before the ALJ. (*Id.* at 54.) Mary Ann Tennyson, his mother, also appeared telephonically and testified. (*Id.*) On May 26, 2021, the ALJ issued a decision that Plaintiff had countable income that affected his eligibility for, or the amount of, his SSI benefits from April 2017 to August 2020, pursuant to section 1611 of the Social Security Act. (*Id.* at 57.) The Appeals Council denied Plaintiff's request for review of the decision, making the ALJ's decision the Commissioner's final decision. (*Id.* at 5.) On April 28, 2023, Plaintiff sought review by this Court. (Doc. 1).

## DISCUSSION

### I. Standard of Review

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n. 13 (9th Cir. 2001). "[O]nly issues [that] are argued specifically and distinctly in a party's opening brief" are reviewed.[1] *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). Moreover, "when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). Failure to do so will only be excused when necessary to avoid a manifest injustice. *Id.*

A court may set aside the Commissioner's determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005)). It is "relevant evidence [that] a reasonable [person] might accept as adequate to support a conclusion" considering the record as a whole. *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). In determining whether substantial evidence supports

---

[1] Plaintiff submitted two opening briefs with identical "statement of issues presented for review." (Docs. 17, 21.)

a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Generally, when the evidence is susceptible to more than one rational interpretation, courts "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). "Overall, the standard of review is 'highly deferential.'" *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).

**II.    Supplemental Security Income Framework**

The Plaintiff raises four issues on review, which can be summed up in one main issue: Whether the money Plaintiff received from his mother while his SSI application was pending constituted a bona fide loan. Wholly aside from medical eligibility the amount of income attributable to a claimant is a major factor in determining whether the person is eligible for SSI benefits and/or the amount of the benefit to which the claimant is entitled. 20 C.F.R. § 416.1100. The amount of a claimant's countable income reduces the amount of available SSI benefits. *Id.* "Income is anything [a person] receive[s] in cash or in kind that [they] can use to meet [their] needs for food and shelter." *Id.* § 416.1102.

In determining SSI eligibility, SSA regulations limit the amount of income and resources an individual may have or receive in each month while retaining eligibility for disability benefits. *See* Program Operations Manual System ("POMS") SI 01110.003. Current regulations provide that a single individual may not have countable resources valued in excess of $2,000 in a given month. *Id.* Likewise, an individual's monthly income may not exceed the income break-even point, which is the point at which the individual has income, either earned or unearned, equal to the applicable federal benefit rate. POMS SI 00810.350. From 2017 to 2020, the break-even point for an individual was $1,555.00-$1,651.00 in earned income per month and $755.00–$803.00 in unearned income per month. *Id.*

In calculating "countable income" the SSA considers earned and unearned income

from different sources. 20 C.F.R. §§ 416.1100, 416.1104, 416.1111, 416.1121. Earned income consists of wages, net earnings from self-employment, refunds of federal income taxes, advance payments by employers, payments for services performed, certain royalties, and honoraria. *Id.* § 416.1110. Unearned income is a benefit derived from things such as annuities, pensions, payment plans, alimony, support payments, dividends, interests, royalties, rents, death benefits, prizes, awards, gifts, inheritance, and support and maintenance in kind. *Id.* § 416.1121.

### III. Analysis

In this case, Plaintiff was found disabled but the ALJ determined he had countable income from April 2017 to August 2020 that affected his eligibility for SSI benefits. (Doc. 11-1 at 57.) The ALJ concluded that the money Plaintiff received from his mother was not a bona fide loan. (*Id.* at 56.) There are certain exceptions for items that are not counted as income for SSI purposes, including "money you borrow or money you receive as repayment of a loan." *Id.* § 416.1103(f). "A loan means an advance from lender to borrower that the borrower must repay, with or without interest. A loan can be cash or an in-kind advance in lieu of cash. Social Security Rulings ("SSR") 92-8P, 1992 WL 466905, at *2 (Sept. 8, 1992) [*hereinafter* SSR 92-8P]. "When money or an in-kind advance in lieu of cash is given and accepted based on any understanding other than that it is to be repaid by the receiver, there is no loan involved for SSI purposes." *Id.* at *3.

Nevertheless, a loan need not be formal. "An informal loan is a loan between individuals who are not in the business of lending money or providing credit." POMS SI 01120.220(D). The Agency's Program Operations Manual System specifies that an informal loan is bona fide if five criteria are met: (1) it must be enforceable under state law; (2) it must have been in effect at the time of the transaction; (3) it must acknowledge the obligation to repay; (4) it must establish a plan for repayment; and (5) repayment must be feasible. POMS SI 01120.220(D)(1)–(5). Thus, if a loan meets these criteria, and is found to constitute a bona fide loan, it is not treated as income for the purposes of SSI eligibility. SSR 92-8P, 1992 WL 466905, at *3. It is the claimant's burden to demonstrate that bona

fide loan agreements exist. *Id.*

In this case, in determining that the loan was not legitimate, the ALJ did not address factors one through four but found that "[t]he agreement between claimant and his mother do not satisfy the requirements for a bona fide loan because there is no mention of a feasible repayment plan [since t]he agreement was contingent upon the claimant's receipt of past-due SSI benefits, with no alternative means of repayment addressed." (Doc. 11-1 at 56.) In this determination, the ALJ erred in several respects.

First, the Social Security Administration's Programs Operation Manual System, makes clear that a plan for a borrower to repay a family member lender from the SSI benefits the borrower would receive when she or he is declared eligible for SSI benefits is a feasible repayment plan.

Example 2 of POMS SI 01120.220(D)(5) describes a feasible loan repayment based on anticipated benefits and aligns with the facts of Plaintiff's case.

EXAMPLE 2: Feasible loan repayment based on anticipated benefits

Claimant applies for SSI disability benefits and alleges a loan:

- Claimant files for SSI on 05/13/11 and alleges his mother pays his rent of $300 each month.

- The claimant states that he must pay his mother back. You contact his mother and she states that she has been paying her son's rent and he must pay her back.

- The claimant also states that he hopes he is approved for SSI so he can use the money to pay his mother back.

Determination:

- Both parties confirmed that repayment was not dependent on whether the claimant's financial situation improved, and

- The repayment plan is feasible because the claimant intends to use anticipated SSI benefits to pay back the loan.

Moreover, under such circumstances, as Example 2 demonstrates, it is a feasible repayment plan, even if the loan does not specify that repayment will occur until the SSI benefits are paid to the claimant.

Example 2 is a rather common-sense application of the loan standard to the realities of being disabled. It takes the Administration some time to make almost any eligibility determination. Given the financial thresholds for eligibility, many who are otherwise eligible have no resources upon which to live during that determination absent a loan from a family member or friend. Thus, many otherwise eligible people would have few to no "alternative means of repayment" for such a loan other than the benefits including retroactive benefits available upon eligibility. A determination that a loan is not feasible because it provides no alternative source of payment other than SSI benefits and provides no repayment plan prior to the receipt of such benefits is erroneous. That is the sole basis of the ALJ's determination here that loan is not valid.

It is not contested that Plaintiff and his mother, Margorie Tennyson, entered into a written agreement on May 1, 2017. The document, signed by both parties of the agreement, reads:

> David,
>
> I will send you enough money each month to get by. It won't be much, we are cash poor. If I find out you are wasting it on foolish things I will pull it. $700 times 18 months is the amount of time it would take and the amount of money it would produce to finish this effort($12600). You get benefits for all the months after the application up to your hearing. *Just remember that you have to repay that money. If the money we lend you is more than the total backpay you get from Social Security, then you are going to have to pay the entire amount to us, period.*
>
> Use your free time wisely. Pay attention to what documents you get and use a better system of keeping track of your documents. *This is the third time you have been unable to find previous agreements. We'll use this letter as a promissory note so sign your name and send it back to me*.
>
> Mom

(Doc. 11-2 at 106) (emphasis added).

On October 23, 2019, Margorie Tennyson prepared an affidavit stating the following:

> On or about the month of April 2017 David Lee Tennyson informed me that he was unable to find employment where he could maintain work due to physical and mental conditions and that he was at that time filing an application for Social Security disability. David informed me that he would need some financial support pending the results of his filing for SSI disability application and *that if I could assist him financially on a month to month basis until after the Administrative hearing that he would repay the amount of such loan from the funds which he would expect to receive as back pay from the date of application.* I advised David that I would assist him financially to the extent I could afford pending repayment of the loan. Since April of 2017 I have loaned David money for living expenses in the amount of approximately $600 to $800 monthly. The loans were delivered monthly by transfer from my credit union account to his credit union account . . . .

(*Id.* at 107) (emphasis added).

At the administrative hearing held on May 19, 2021, Plaintiff testified under oath as follows:

> [W]e all knew that I was in bad shape, so there was no doubt about being real disabled, and since that was the only requirement they thought at the time, I would repay money would be done in the retro -- when we got the lump sum of retroactive funds, it would be repaid out of that.
>
> . . .
>
> I've tried to pay whenever possible, even though, you know, I'm not getting a lot of money, I have gotten some government stimulus checks, and I paid them back I think maybe -- I've tried to send a couple hundred dollars a month any time I had the ability and I think I've maybe repaid $800.
>
> . . .
>
> Based on the expenses, [I still owe], probably $19,000.

(Doc. 11-1 at 37, 46–47.)

Margorie Tennyson also testified that she expected to be repaid "when he got his back pay from Social Security . . . ." (*Id.* at 48–49.) She testified the time period Plaintiff

- 7 -

was supposed to pay her back "was open-ended because we didn't know when he would ever get his back pay from Social Security, there was no way of telling how long it would be, so we couldn't put a date on it." (*Id.* at 49.) She later responded "[y]es" to Plaintiff's attorney when asked to clarify that the time frame "was based on how long it would take Social Security to make the determination." (*Id.* at 50.)

SSI regulations provide that a loan agreement may be oral or written and may be between family members and friends. Social Security Rulings are binding on ALJs. *Molina*, 674 F.3d at 1113 n. 5. SSR 92-8P defines a loan as "an advance from lender to borrower that the borrower must repay." 1992 WL 466905, at *2. "This applies to any commercial or noncommercial loan (between relatives, friends or others) that is recognized as enforceable under State law. The loan agreement may be oral or written . . . ." *Id.* "Any advance an SSI applicant or recipient receives that meets the above definition of a loan is not income for SSI purposes since it is subject to repayment." *Id.*

In Arizona, in any event, a written and enforceable contract may be interpreted by parole evidence that is consistent with the writing. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 153–54, 854 P.2d 1134, 1139–40 (1993). Here, the original loan agreement, both in itself, and in the subsequent affidavit and hearing testimony, anticipates any back pay SSI award as being the major source of the loan repayment. The agreement also indicates that if the back pay award is insufficient to pay the loan amount, the ongoing SSI proceeds and other sources would be looked to for repayment. (Doc. 11-2 at 106.) This is in compliance with the second example of acceptable loans offered in the Administration's program operations manual.

Second, the ALJ relied on POMS SI 01120.220(D) to establish the five elements required for a bona fide loan. (Doc. 11-1 at 56.) Example 2 unequivocally states that a payment plan is feasible when "the claimant intends to use anticipated SSI benefits to pay back the loan." POMS SI 01120.220(D)(5). Although "[t]he POMS does not have the force of law, [] it is persuasive authority." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 (9th Cir. 2006). "An interpretation that does not carry the force of law,

however, may still be entitled to *Skidmore* deference[2] as long as it is not plainly erroneous or inconsistent with the governing statute." *Larson v. Saul*, 967 F.3d 914, 925 (9th Cir. 2020). *See* 20 CFR 416.1103(f) ("Money you borrow or money you receive as repayment of a loan is not income."); *see also* 20 C.F.R. § 416.1101.

Here, Plaintiff applied for SSI on April 20, 2017. (Doc. 11-1 at 56.) Ten days later, Plaintiff's mother sent him a written agreement stating she will pay his rent from the date of the SSI application until benefits were received. (Doc. 11-2 at 87, 96–97.) A written agreement, affidavit, and testimony show that Plaintiff was required to pay his mother back "the entire amount." (Doc. 11-1 at 46–49; Doc. 11-2 at, 106–107.) Plaintiff testified that he would repay his mother with a "lump sum of retroactive funds." (Doc. 11-1 46–47.) Plaintiff, however, also started making payments to his mother "whenever possible", including with "some government stimulus checks" and "a couple hundred dollars a month any time [he] had the ability." (*Id.* at 46–47.) Plaintiff repaid $800 without receiving any backpay SSI benefits. (Doc. 11-1 at 47.) Plaintiff's intent to use anticipated SSI benefits to pay back the loan seems to be one of few realistic options for SSI applicants and supports the determination in Example 2 that the plan is feasible.

Other courts in the Ninth Circuit have reached the same conclusion. In *Michael L. v. Berryhill*, the District Court of Oregon reversed and ALJ's decision and remanded for immediate recalculation and payment of benefits. No. 3:18-CV-01115-YY, 2019 WL 3992270, at *6 (D. Or. Aug. 23, 2019). The SSI applicant owed $41,800 after he received in-kind support (food and shelter) from his mother. *Id.* at *2. The applicant submitted an affidavit stating his intentions to "pay toward the loan with any additional SSI back payments he receives, as well as 'pay some amount of the remainder of [his] SSI every month . . . to chip away at whatever remained of [his] debt . . . .'" *Id.* at *2 (alterations in original). The district court determined that the SSI applicant would be able to pay off his debt within 17 years, which "is no less feasible than a 15-or 30-year mortgage." *Id.* at *5.

---

[2] "[T]he well-reasoned views of the agencies implementing a statute 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" *Bragdon v. Abbott*, 524 U.S. 624, 642 (1998) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 139–140 (1944)).

Relying on POMS SI 00835.482(B)(5), examples 1 and 2, the district court concluded that a repayment plan where the claimant "intends to use anticipated SSI benefits to pay back the loan . . . demonstrates [a] repayment plan [that] is feasible."

Here, Plaintiff owes his mother a debt that is sufficiently specific to be enforceable under Arizona law. *See, e.g.*, *Taylor*, Ariz. at 153–54, 854 P.2d at 1139–40. The amount of that debt is between $19,000 and $25,000. (Doc. 11-1 at 47; Doc. 11-2 at 111.) A written agreement, affidavit, and testimony show that Plaintiff must and intends to repay his mother. (Doc. 11-1 at 46–49; Doc. 11-2 at 106–107.) Plaintiff makes enough money to cover all his expenses and pays "a couple hundred dollars a month" towards his loan. (Doc. 11-1 at 47.) Plaintiff was denied backpay for 32 months. (*Id.* at 83–86.) The backpay benefits are anticipated as a major source of the loan's repayment. But even without receiving the backpay benefits, if Plaintiff continues to pay his mother $200 per month, he can repay the loan within 125 months (10.5 years).

Thus, Plaintiff's agreement with his mother to repay the cash she loaned him for rent with his anticipated SSI benefits demonstrates a valid loan and feasible repayment plan under SSR 92-8P and POMS SI 01120.220(D). The ALJ's determination to the contrary is reversed.

## IV. The Credit-As-True Rule

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). The Ninth Circuit applies the "credit-as-true" rule if three elements are met: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record is fully developed and no outstanding issues exist that would make further proceedings useful; and (3) if "no outstanding issues remain and further proceedings would not be useful," only then do we have discretion to find the "relevant testimony credible as a matter of law." *Washington v. Kijakazi*, 72 F.4th 1029, 1041 (9th Cir. 2023) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014)).

The first element is met because as the Social Security Administration's policies

make clear, a feasible loan repayment plan exists when repayment is based on anticipated SSI benefits. POMS SI 01120.220(D)(5).

The second element is met because Plaintiff's disability has been established, the record regarding the loan has been fully developed, and the ALJ made an erroneous determination based on all available facts that Plaintiff is disqualified from receiving benefits due to the invalidity of the loan. The Commissioner also agrees that the validity of the loan was the sole issue: "The ALJ considered the agreement between Plaintiff and his mother, and the decision focused on whether the agreement was a bona fide loan consistent with agency policy . . . . Thus, even if the agency did not consider the agreement at the initial and reconsideration levels, it was part of the record before the ALJ who fully considered it in her decision . . . ." (Doc. 23 at 6–7.)

The third element is met because the ALJ's determination that the loan was not feasible was erroneous and no other issue which would justify denial of Plaintiff's benefits presents itself in the record.

Thus, the credit-as-true elements have been met and remand for an award of benefits is warranted.

**CONCLUSION**

**IT IS THEREFORE ORDERED** that the final decision of the Commissioner of Social Security is **REVERSED**, and this case is **REMANDED** for the calculation and award of benefits. The Clerk shall terminate this case and enter judgment accordingly.

Dated this 27th day of June, 2024.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge